# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CRYSTAL BORZICK,**

    **Plaintiff,**

    v.                                              Case No. 18-CV-1899

**ANDREW M. SAUL,**
**Commissioner of Social Security,**

    **Defendant.**

## DECISION AND ORDER

Crystal Borzick seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is reversed and the case is remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

Borzick filed an application for a period of disability and disability insurance benefits and an application for supplemental security income alleging disability beginning on June 12, 2012 due to anxiety, bipolar disorder, depression, migraines, allergies, left arm numbness, left elbow and shoulder pain, and carpal tunnel syndrome. (Tr. 272.) Borzick's applications were denied initially and upon reconsideration. (Tr. 16.) Borzick filed a request for a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on December 18, 2017. (Tr. 37–66.) Borzick testified at the hearing, as did Mary Andrews, a vocational expert. (*Id.* at 37.)

In a written decision issued February 5, 2018, the ALJ found that Borzick had the following severe impairments: carpal tunnel syndrome, migraine headaches, anxiety, depression, and post-traumatic stress disorder. (Tr. 18.) The ALJ further found that Borzick did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 19–20.) The ALJ found Borzick had the residual functional capacity ("RFC") to perform light work, with the following limitations: occasionally handle and finger with the right dominant hand and frequently with the left hand; avoid exposure to vibration; occasional changes in a routine work setting; limited to simple and routine tasks, but not at a production pace; occasionally work with supervisors and coworkers, but never with the general public; and off-task up to ten percent of the workday. (Tr. 20–21.)

The ALJ found Borzick capable of performing her past relevant work as a cleaner/housekeeping. (Tr. 28.) The ALJ alternatively found that given Borzick's age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that she could also perform. (*Id.*) As such, the ALJ found that Borzick was not disabled from her alleged onset date until the date of the decision. (Tr. 29.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review. (Tr. 1–6.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it

is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to this Case*

Borzick argues the ALJ made multiple errors; however, each alleged error stems from the ALJ's failure to find Borzick's bipolar disorder to be a severe impairment at step two of the five-step sequential evaluation for determining whether an individual is disabled.

At step two, the ALJ determines whether a claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. § 404.1521. An impairment must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques; thus, a physical or mental impairment must be established by objective medical evidence from an acceptable medical

3

source. *Id*. A plaintiff's statement of symptoms, a diagnosis, or a medical opinion alone will not establish the existence of an impairment. *Id.* After a medically determinable impairment is established, the ALJ then determines whether the impairment is severe. *Id.*

It is unclear whether the ALJ even considered Borzick's bipolar disorder to be a medically determinable impairment. This was error. Borzick undoubtedly alleged disability due to bipolar disorder, among other physical and mental impairments. (Tr. 272.) The ALJ questioned Borzick about her treatment for bipolar disorder at the administrative hearing and Borzick testified that on a typical day, "[a]t any point in time, [her] bipolar can kick in," causing mood swings. (Tr. 49, 52.) Thus, the ALJ was aware that Borzick's bipolar disorder was at issue. Furthermore, the record indicates that Borzick was diagnosed with bipolar disorder and treated with Janice Hubert, LMFT for her bipolar disorder between May and December 2015 and from February 2016 until September 2017. (Tr. 523–45, 595–607, 664–94.) Borzick also treated with Nurse Practitioner Basil Maduka from August 2016 until November 2017 for management of her bipolar medications, including Lamictal and amitriptyline. (Tr. 68, 702–16.) Beyond the stated diagnosis of bipolar, Hubert noted at multiple appointments that Borzick was experiencing mood cycling (Tr. 524, 526, 535) and Maduka noted Borzick was experiencing symptoms of both hypomania (such as racing thoughts, insomnia, irritability, and reckless spending) and depression (Tr. 679).

Given the record evidence, it is unclear why the ALJ did not consider whether Borzick's bipolar disorder was a medically determinable impairment. This error is significant because only limitations and restrictions attributable to medically determinable impairments must be considered in assessing the RFC. SSR 98–6p. Thus, if Borzick's bipolar disorder is a

4

medically determinable impairment—whether severe or not—it must be considered in the ALJ's RFC determination. *Id.*

The Commissioner acknowledges that the ALJ "did not explicitly discuss [Borzick's] bipolar disorder" (Def.'s Br. at 4, Docket # 14), yet makes several arguments in defense of the ALJ's decision. First, he argues that the RFC assessment properly accounted for Borzick's bipolar disorder-related limitations when he considered her limitations due to anxiety, depression, and PTSD, and that Borzick fails to articulate what additional limitations her bipolar disorder requires. (*Id.*) I am not convinced. Bipolar disorder is not anxiety, depression, or PTSD, even if certain symptoms overlap. As the Seventh Circuit explained:

> A person suffering from [bipolar] disorder has violent mood swings, the extremes of which are mania—a state of high excitement in which he loses contact with reality and exhibits bizarre behavior—and clinical depression, in which he has great difficulty sleeping or concentrating, has suicidal thoughts and may actually attempt suicide. The condition, which varies in its severity, is treatable by antipsychotic drugs and other medications. But many patients do not respond well to treatment, or have frequent relapses. "For many patients, the prognosis of bipolar disorder is not good, as the disorder is associated with frequent relapses and recurrences."

*Bauer v. Astrue*, 532 F.3d 606, 607 (7th Cir. 2008) (internal citations omitted). Because bipolar disorder includes depressive episodes, it can be easily confused with depression. Hurley, Katie, LCSW, "Bipolar Disorder and Depression: Understanding the Difference," PsyCom, available at https://www.psycom.net/depression.central.bipolar.depression.html (last visited Oct. 4, 2019). The main difference between bipolar disorder and depression is that bipolar disorder also includes symptoms of mania, whereas depression does not. *Id.* Again, the record reflects evidence of mood cycling and manic episodes, as well as depression. (Tr. 524, 526, 535, 679.) Given the fact the ALJ did not consider whether Borzick's bipolar

5

disorder was a medically determinable impairment, it is unclear whether these specific bipolar symptoms were accounted for in her RFC.

The Commissioner also argues that the ALJ's failure to specifically consider Borzick's bipolar disorder is effectively harmless because the ALJ relied on the opinions of two state agency consultants who did evaluate her bipolar disorder. At the initial level of consideration in December 2015, a state agency psychologist, Dr. Susan Donahoo, opined that due to Borzick's bipolar disorder, anxiety disorder, and panic attacks, she should be limited to simple tasks and would do best in an environment with more limited social interactions. (Tr. 87.) At the reconsideration level in May 2016, Dr. Stephen Kleinman agreed with Dr. Donahoo's stated limitations. (Tr. 113.) The ALJ accorded both opinions significant weight, and limited Borzick to simple and routine tasks with only occasional work with supervisors and co-workers and no work with the general public. (Tr. 21.)

The ALJ did incorporate the state agency consultants' limitations due to bipolar disorder into the RFC. However, this does not negate the ALJ's error. Both of Borzick's treating mental health providers also evaluated her bipolar-related limitations. Borzick's treating therapist, Hubert, completed two mental RFC questionnaires, one in November 2015 (Tr. 546–50) and one in June 2017 (Tr. 612–16). Hubert noted in November 2015 that Borzick reported periods of significant anxiety with panic attacks, as well as depressed mood, cycling to mania, as evidenced by extreme irritability (Tr. 546.) Hubert opined that Borzick was unable to meet competitive standards in performing at a consistent pace and completing a normal workday and workweek, as well as responding appropriately to changes in a routine work setting. (Tr. 548.) Hubert also opined that Borzick would miss more than four days of work per month due to her mental impairments or treatment. (Tr. 550.)

In June 2017, Hubert noted that Borzick had mood cycling consistent with her bipolar diagnosis and that work stressors may trigger her bipolar symptoms. (Tr. 612, 615.) Hubert stated that while Borzick's prognosis was good, she may have periods of decompensation due to her bipolar disorder. (*Id.*) Hubert continued to opine that Borzick was unable to meet competitive standards in many mental abilities and aptitudes needed to do unskilled work (Tr. 614) and would miss more than four days of work per month due to her mental impairments or treatment (Tr. 616).

Borzick's treating nurse practitioner, Maduka, completed a mental RFC questionnaire in December 2017. (Tr. 813–17.) Maduka stated that Borzick was diagnosed with bipolar disorder with psychotic features and that she had a history of hallucinations and poor concentration. (Tr. 813.) Maduka agreed that Borzick was limited, but could still satisfactorily understand, remember, and carry out very short and simple instructions. (Tr. 815.) Maduka opined, however, that Borzick was unable to meet competitive standards dealing with work stress and performing at a consistent pace. Maduka further opined that Borzick's mental impairments would cause her to be absent from work about three days per month. (Tr. 817.)

The ALJ assigned some weight to Maduka's and Hubert's opinions; however, the ALJ disagreed with their opinions "concerning the claimant's abilities not meeting competitive standards in various work-related mental activities, as well as being absent about three days and more than four days per month." (Tr. 27.) What is unclear, however, is *why* she disagreed with Maduka's and Hubert's opinions. The Commissioner acknowledges that the ALJ did not "explicitly state his [sic] rationale in weighing the opinions"; however, he argues that when read as a whole, the decision indicates that Maduka's and Hubert's opinions were inconsistent with the state agency opinions and unsupported by their own treatment notes.

7

(Def.'s Br. at 10.) While I agree that an ALJ's decision must be considered as a whole, I cannot piece together the rationale for her rejection of Maduka's and Hubert's opinions. The ALJ simply states that she disagrees with the portions of the opinions that contradict her RFC finding, and agrees with the portions that support it. But the ALJ fails to bridge the gap between the evidence and her decision to reject these opinions. And the Commissioner's after-the-fact explanation for rejecting the opinions is insufficient. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (noting that the *Chenery* doctrine forbids an agency's lawyers from defending the agency's decision on grounds that the agency itself had not embraced).

This error is further complicated by the fact that the ALJ did not consider Borzick's bipolar disorder. Both Maduka's and Hubert's opinions specifically link her limitations to her bipolar disorder. In particular, both Hubert and Maduka opined that Borzick would miss at least three days per month due to her bipolar disorder. (Tr. 616, 817.) The VE testified that if an individual were consistently missing two to four days of work per month, that alone would eliminate full-time competitive employment. (Tr. 63.) While the ALJ rejected this portion of Hubert's and Maduka's opinions, because she did not specifically consider Borzick's bipolar disorder, it is unclear whether she accounted for the mood cycling specific and unique to bipolar disorder that both providers noted Borzick experienced. Further, both Maduka and Hubert opined that work stressors may trigger Borzick's bipolar symptoms and that she was unable to deal with normal work stress on a sustained basis in a regular work setting. (Tr. 614–15, 815–16.) Given the consistency between these providers' opinions and the ALJ's failure to consider bipolar disorder as a medically determinable impairment, I am not convinced that the ALJ's RFC assessment properly accounts for all of Borzick's limitations. For these reasons, the case must be remanded.

## CONCLUSION

Although the record indicates Borzick was diagnosed with bipolar disorder, treated for bipolar disorder, and suffered symptoms related to bipolar disorder, the ALJ failed to consider whether bipolar disorder was a medically determinable impairment. This error at step two may alter Borzick's RFC analysis and thus requires remand.

Although Borzick requests that this Court award her benefits in lieu of remanding the case, an award of benefits is appropriate only "if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005). Here, there are unresolved issues and this is not a case where the "record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Therefore, the case is appropriate for remand pursuant to 42 U.S.C. § 405(g), sentence four.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 7th day of October, 2019.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge